UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JORGE RODRIGUEZ, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>CITIMORTGAGE, INC.,<br><br>     Defendant. | Civil Action No.: 11-cv-4718-PGG |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION .................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.......................................... 2

CLASS ACTION SETTLEMENT PROCEDURE ............................................ 4

ARGUMENT ...................................................................................................... 6

I.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS
APPROPRIATE.................................................................................... 6

    A.    Litigation Through Trial Would Be Complex, Costly, And
Long  (*Grinnell* Factor 1)......................................................... 8

    B.    The Reaction Of The Class (*Grinnell* Factor 2)......................... 8

    C.    Discovery Has Advanced Far Enough To Allow The
Parties To Responsibly Resolve The Case (*Grinnell* Factor
3) ................................................................................................ 8

    D.    Plaintiff Would Face Real Risks If The Case Proceeded
(*Grinnell* Factors 4 And 5)........................................................ 9

    E.    Establishing A Class And Maintaining It Through Trial
Would Not Be Simple (*Grinnell* Factor 6) ................................ 9

    F.    Defendants' Ability To Withstand A Greater Judgment
(*Grinnell* Factor 7) .................................................................... 10

    G.    The Settlement Amount Reasonable In Light Of The
Possible Recovery And The Attendant Risks Of Litigation
(*Grinnell* Factors 8 And 9)........................................................ 10

II.    CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS
IS  APPROPRIATE .............................................................................. 11

    A.    Numerosity ................................................................................. 13

    B.    Commonality................................................................................ 13

    C.    Typicality ................................................................................... 14

    D.    Adequacy Of The Named Plaintiff ............................................ 14

    E.    Certification Is Proper Under Rule 23(b)(3) ............................... 15

        1.    Common Questions Predominate ................................... 16

        2.    A Class Action Is A Superior Mechanism...................... 16

III.    PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS
CLASS COUNSEL................................................................................ 17

IV.    THE PROPOSED CLASS NOTICE IS APPROPRIATE....................... 18

    A.    The Content Of The Proposed Class Notice Complies With
Rule 23(c)(2) .............................................................................. 18

    B.    The Plan For Distribution Of The Class Notice Complies
With Rule 23(c)(2) ...................................................................... 19

CONCLUSION.................................................................................................... 19

i

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................ 11, 15, 16

*Brown v. Title Ticor Ins. Co.*,
   982 F.2d 386 (9th Cir. 1992) ................................................................................ 15

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ........................................................................ passim

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) ................................................................................ 13

*County of Suffolk v. Long Island Lighting Co.*,
   710 F. Supp. 1422 (E.D.N.Y. 1989) ................................................................... 12

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir.2001) ................................................................................... 8

*Damassia v. Duane Reade, Inc.*,
   250 F.R.D. 152 (S.D.N.Y. 2008) ........................................................................ 13

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) ............................................................................... 14

*Dziennik v. Sealift, Inc.*,
   No. 05 Civ. 4659, 2007 U.S. Dist. LEXIS 38701 (E.D.N.Y. May 29, 2007) .......................... 14

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ...................................................................... passim

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ........................................................................................... 13

*Gilliam v. Addicts Rehab. Ctr. Fund*,
   2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ........................................................ 11

*Green v. Wolf Corp.*,
   406 F.2d 291 (2d Cir. 1968) ............................................................................... 16

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998). ................................................................. 11, 13, 17

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ............................................................. 8, 9, 10

*In re BankAmerica Corp. Securities Litig.*,
   210 F.R.D. 694 (E.D. Mo. 2002) .......................................................................... 7

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) .......................... 7
*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995).................................................................................... 11, 12
*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 57 (S.D.N.Y. 1993) ............................................................................ 19
*In re Prudential Insur. Sales Practices Litig.*,
   962 F.Supp. 450 (D.N.J. 1997) ............................................................................ 16
*In re Traffic Executive Ass'n*,
   627 F.2d 631 (2d Cir. 1980).................................................................................. 6
*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001).............................................................................. 16, 17
*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000)................................................................................ 11
*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
   109 F.R.D. 391 (S.D.N.Y. 1986) ........................................................................ 13
*Lenahan v. Sears, Roebuck & Co.*,
    No. 02-CV-0045, 2006 U.S. Dist. LEXIS 60307 (D.N.J. July 10, 2006).............................. 12
*Lynn's Food Stores, Inc. v. U.S.*,
   679 F.2d 1350 (11th Cir. 1982) ........................................................................... 6
*Marcus v. Kan. Dep't of Revenue*,
   209 F. Supp. 2d 1179 (D. Kan. 2002) .................................................................. 7
*Martens v. Smith Barney Inc.*,
   181 F.R.D. 243 (S.D.N.Y. 1998) ......................................................................... 14
*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1998)................................................................................ 6
*McBean v. City of New York*,
   228 F.R.D. 487 (S.D.N.Y. 2005) ......................................................................... 16
*Milonas v. Williams*,
   691 F.2d 931 (10th Cir. 1982) ............................................................................ 14
*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972)................................................................................ 10
*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999)........................................................................................ 15
*Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*,
   698 F.2d 150 (2d Cir. 1983)................................................................................ 13

*Reyes v. Buddha-Bar NYC*,
    2009 WL 5841177 (S.D.N.Y. May 28, 2009) ....................................................... 15
*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)................................................................................ 13, 14
*Rossini v. Ogilvy & Mather, Inc.*,
    798 F.2d 590 (2d Cir. 1986)........................................................................................ 15
*Savino v. Computer Credit, Inc.*,
    173 F.R.D. 346 (E.D.N.Y. 1997) ................................................................................. 13
*TBK Partners, Ltd. v. Western Union Corp.*,
    517 F. Supp. 380 (S.D.N.Y. 1981) ............................................................................... 8
*Teachers' Ret. Sys. Of Louisiana v. A.C.L.N. Ltd.*,
    2004 WL 2997957 (S.D.N.Y. May 14, 2004) ............................................................. 11
*Torres v. Gristede's Oper. Corp.*,
    2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) .............................................................. 9
*Toure v. Cent. Parking Sys.*,
    No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sept. 28, 2007) .......... 14
*Trief v. Dun & Bradstreet Corp.*,
    144 F.R.D. 193 (S.D.N.Y. 1992) ................................................................................. 13
*Trinidad v. Breakaway Courier Sys., Inc.*,
    05 Civ. 4116, 2007 U.S. Dist. LEXIS 2914 (S.D.N.Y. Jan. 12, 2007)...................... 14
*Wagner v. NutraSweet Co.*,
    95 F.3d 527 (7th Cir. 1996) ......................................................................................... 14
*Wal-Mart Stores, Inc. v.Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)............................................................................................. 6
*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008)............................................................................ 7

**STATUTES**

50 App. U.S.C.A. § 533(c)................................................................................................ 2

**RULES**

Fed. R. Civ. P. 23(a) ................................................................................................ 12, 13, 14
Fed. R. Civ. P. 23(b)(3)........................................................................................ 1, 12, 15, 16
Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................... 18
Fed. R. Civ. P. 23(e) ........................................................................................................... 5
Fed. R. Civ. P. 23(f)........................................................................................................... 10
Fed. R. Civ. P. 23(g) ......................................................................................................... 17
Fed. R. Civ. P. 23(g)(1)(C)(i) ........................................................................................... 17
Fed. R. Civ. P. 23(g)(1)(C)(ii) .......................................................................................... 17

**TREATISES**

*Newberg on Class Actions* ("*Newberg*"), (4th ed. 2002) ................................................. 5, 6, 7, 11

## INTRODUCTION

Plaintiff Sergeant Jorge Rodriguez and Defendant CitiMortgage, Inc. ("CitiMortgage" or "Defendant") have reached an agreement resolving all claims in this action on a class-wide basis. This motion seeks preliminary approval of that settlement.

The proposed settlement (the "Settlement") was harmonized with a similar settlement between CitiMortgage and the United States Department of Justice (the "DOJ Settlement").  The Settlement requires CitiMortgage to submit all foreclosure sales from January 1, 2006 through June 30, 2012 for Servicemembers Civil Relief Act ("SCRA") foreclosure compliance review under the terms of the DOJ Settlement.  Settlement Agreement at 7, Marchese Decl. Exh. A.  The review will be conducted by a Third Party Consultant, PriceWaterhouseCoopers LLP ("PwC").  *See id.* at 6-7, 9-13.  That review will result in the creation of a Class List, which will identify the Servicemember borrowers (and their respective SCRA mortgage loans) who were protected by the SCRA at the time of the foreclosure sale.  *Id.* at 3, 7, 12.  Individual notice will be sent by first class mail within 5 days after the compilation of the Class List, after updating all addresses through a national change of address service, and reasonable address traces will be performed for all Class Notices that are returned as undeliverable.  *Id.* at 8-9.  Class members will be permitted to claim a monetary recovery of $116,785.00, plus the amount of any lost equity in the foreclosed property, plus interest accrued on such lost equity calculated from the date of the foreclosure sale.  *Id.* at 13-14.

The proposed Settlement is fair and reasonable, serves the best interests of the Class Members and is worthy of this Court's approval.  Accordingly, Plaintiff respectfully requests that the Court (1) grant preliminary approval of the Settlement Agreement; (2) provisionally certify the settlement class under Fed. R. Civ. P. 23(b)(3) in connection with the settlement process; (3) appoint Bursor & Fisher, P.A., Carlson Lynch Ltd., and Faruqi & Faruqi, LLP (collectively, "Interim Class Counsel") as Class Counsel; (4) appoint Sergeant Rodriguez as the Class Representative for the Settlement Class; and (5) approve the Notice of Class Action and Proposed Settlement (the "Proposed Notice"), attached as Exhibit E to the Settlement Agreement, and direct distribution of the Proposed Notice.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 8, 2011, Plaintiff Jorge Rodriguez filed this action on behalf of himself and all others similarly situated against defendant CitiMortgage, Inc. ("CitiMortgage" or "Defendant"). *See* Class Action Complaint ("Complaint"), Dkt. No. 1 at 1.  Sergeant Rodriguez alleged that while he was serving his country on active military duty in support of Operation Iraqi Freedom, CitiMortgage foreclosed on his mortgage and sold his property.  *Id.* ¶ 1.  Sergeant Rodriguez alleged that he was protected by the SCRA during the foreclosure process and sale, and that CitiMortgage's foreclosure sale of his property violated that law.  *Id.* ¶ 2. Sergeant Rodriguez asserts one claim for violation of 50 App. U.S.C.A. § 533(c) of the SCRA (Count I).  *Id.* ¶¶ 34-40.   This claim was asserted on behalf of Sergeant Rodriguez individually, and also on behalf of a putative class, which is defined in the operative complaint.[1] *Id.* ¶ 25.  CitiMortgage answered the complaint on September 30, 2011, denying any alleged liability or wrongdoing.  Dkt. No. 15.

On November 23, 2011, plaintiff served his first set of document requests, interrogatories, and a Rule 30(b)(6) deposition notice.  Marchese Decl. ¶ 4.  On December 1, 2011, CitiMortgage served its first set of document requests and interrogatories.  *Id.* ¶ 4.  On December 28, 2012, plaintiff served subpoenas on the law firm that represented CitiMortgage in the foreclosure action, Barrett Burke Wilson Castle Daffin & Frappier, L.L.P. ("Barrett Burke"), and on the Barrett Burke employee who executed an affidavit in support of that foreclosure, Latreese Ellis.  *Id.*  ¶ 5.

In January and February 2012, Sergeant Rodriguez and CitiMortgage made substantial document productions.  *Id.* ¶ 6.  The parties also briefed a number of discovery disputes, which were the subject of three telephonic hearings with Magistrate Judge Freeman.  *Id.* ¶ 7.  The parties also conducted substantial third-party discovery and related motion practice in the United States District Court for the Northern District of Texas.  *Id.* ¶ 7.

---

[1] The parties have stipulated to the filing of a First Amended Complaint to conform the class definition to the terms of the settlement.  *See* Settlement Agreement at 1, Marchese Decl. Exh. A. That stipulation and the proposed amended complaint, are being submitted contemporaneously with this motion.

On February 2, 2012, plaintiff also subpoenaed PwC, seeking information from PwC's review of Citibank's residential foreclosure actions pursuant to Article VII of the April 13, 2011 Office of the Comptroller of the Currency ("OCC") Consent Order.  Marchese Decl. ¶ 7.  The subpoena to PwC sparked negotiations between the parties and PwC concerning the application of the OCC's bank examination privilege, and the discoverability of information that CitiMortgage and PwC asserted to be protected by that privilege.  *Id.* ¶ 7.

During March, April and May of 2012, the parties conducted eight depositions in five states:  Maryland, Missouri, New York, Texas, and West Virginia.  *Id.* ¶ 8.

In addition to the discovery done through this litigation, both the plaintiff and defendant also sought and obtained relevant information from governmental sources through Freedom Of Information Act ("FOIA") requests.  CitiMortgage obtained Sergeant Rodriguez's military records through a FOIA request.  *Id.* ¶ 10.  And plaintiff's counsel also sought and obtained information through multiple FOIA requests to the Consumer Financial Protection Bureau ("CFPB") and the U.S. Dept. of Housing and Urban Development ("HUD").  *Id.* ¶ 10.  Plaintiff's counsel also had extensive correspondence and interaction with military officials at the Defense Manpower Data Center ("DMDC") concerning the capabilities of the U.S. Department of Defense's SCRA website, and proposed improvements thereto.  *Id.* ¶ 10.

While vigorously litigating this action, the parties have also been engaged in nearly continuous settlement negotiations.  Marchese Decl. ¶ 12.  Settlement discussions among counsel began shortly after this action was filed and continued through December 2012.  *Id.* ¶ 12.

On July 17, 2012, the parties advised the Court that they had made substantial progress towards settlement of this action and were endeavoring to harmonize the anticipated DOJ Settlement implementation terms with the anticipated settlement of this action, and jointly requested a stay of the litigation to permit the parties to focus their efforts exclusively on settlement negotiations.  Marchese Decl. ¶ 13.  On July 19, 2012, the Court granted the parties' request and entered an order staying this action.  *See* Dkt. No. 40.  Thereafter, the parties provided periodic updates to keep the Court apprised of the status of their negotiations.  Marchese Decl. ¶ 13.

On or about December 28, 2012, the parties executed the Settlement Agreement.  The proposed settlement provides for the certification, for settlement purposes only, of the following Settlement Class:

> All current and former members of the United States Armed Forces with Eligible Loans whose real property securing the Eligible Loan was sold by Defendant at a completed foreclosure sale from January 1, 2006 through June 30, 2012 where (i) the mortgage securing the loan on the property originated before the Servicemember's Military Service; (ii) the sale occurred during the Servicemember's period of Active Duty Military Service or within the applicable grace period, as defined and protected by the SCRA; and (iii) the sale occurred without prior court approval or a written waiver of the rights and protections provided by the SCRA, or without otherwise complying with Sections 533, 521 or any other mortgage foreclosure related provisions of the SCRA.

Settlement Agreement at Section A.26, Marchese Decl. Exh. A.  Each member of the Settlement Class will be sent individual notice by first class mail, and will be permitted to claim a monetary recovery of $116,785.00, plus the amount of any lost equity in the foreclosed property, plus interest accrued on such lost equity calculated from the date of the foreclosure sale.  *Id.* at 13-14. Class Counsel are permitted to request approval of attorneys' fees and costs in an amount not to exceed three million, five-hundred, twenty five thousand dollars ($3,525,000.00) and Defendant agrees that it will not oppose such an application.  *Id.* at 18.  Class Counsel must submit a fee petition consistent with the terms of the Settlement Agreement no later than 10 days prior to the date set for the final approval hearing.  *Id.*  Sergeant Rodriguez is permitted to request approval of a settlement payment of $166,785.00 on his individual claim, and must file a motion to approve this settlement payment no later than 10 days prior to the date set for the final approval hearing.  *Id.* at 18-19.

## CLASS ACTION SETTLEMENT PROCEDURE

Judicial proceedings have established a defined procedure and specific criteria for settlement approval in class action settlements, which includes three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval and certification of settlement classes;

2. Dissemination of mailed notice of settlement to all affected

Class members; and

3. A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002).  This process safeguards class members' procedural due process rights and enables the court to fulfill its role as the guardian of class interests.

With this motion, Plaintiff requests that the Court take the first step – granting preliminary approval of the Settlement Agreement, provisionally certifying the settlement class, and approving Plaintiff's Proposed Notice and authorizing them to send it.

Subject to this Court's preliminary approval, the Parties respectfully submit the following proposed schedule for final resolution of this matter for the Court's consideration and approval:

1. Class Notice will be directly mailed to servicemembers comprising the Settlement Class via first class mail starting no later than 5 days following compilation of the Class List per Section F.3(c) of the Settlement Agreement.  Settlement Agreement at Section E.1, Marchese Decl. Exh. A.

2. Class Members, who do not accept financial relief under the settlement, will have the right to opt out of the Settlement Class or object to the Settlement by a specified date in the Class Notice which shall be 35 days following the date Class Notice is initially mailed.   Settlement Agreement at Sections I & J.

3. Plaintiff will file a Motion for Final Approval of Settlement no later than 10 days prior to the date set for the final approval hearing.  *Id.* atK.

4. Interim Class Counsel will file a fee petition no later than 10 days prior to the date set for the final approval hearing.  *Id.* at K.1.

5. A final approval hearing will be held as soon as is convenient for the Court.

6. After the final approval hearing, if the Court grants Plaintiffs' Motion for Final Approval of the Settlement, the Court will issue a Final Approval Order and Judgment of Dismissal (the "Final Order and Judgment").  The Effective Date of the Settlement will occur on the date set forth in the Settlement Agreement as the "Effective Date."  *Id.* at A.11.

7. Payment of the Individual Settlement Benefits to the Class Members will be distributed via check payments in the manner set forth in the DOJ Settlement in accordance with Section H.2 of the Settlement Agreement.

## ARGUMENT

## I.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v.Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted); *see also Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). The approval of a proposed class action settlement is a matter of discretion for the trial court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998).

Preliminary approval, which is what Plaintiff seeks here, requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Newberg* § 11.25. To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotations omitted); *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982) (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (same); *Marcus v. Kan. Dep't of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) ("When a settlement is reached by

6

experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable.").

If the settlement was achieved through arm's-length negotiations by experienced counsel, "[a]bsent fraud or collusion," "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, *12 (S.D.N.Y. July 27, 2007); *In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations . . .") (internal quotations omitted).

This first step in the settlement process simply allows notice to issue to the class and for class members to object or opt-out of the settlement.  After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input.

In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  Although the Court's task on this motion is merely to perform an "initial evaluation," *Newberg* § 11.25, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  495 F.2d at 463.  Nearly all of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

### A.   Litigation Through Trial Would Be Complex, Costly, And Long  (*Grinnell* Factor 1)

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay, and instead ensure recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir.2001).  Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results.  *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd,* 675 F.2d 456 (2d Cir. 1982).

This case is no exception.  As discussed above, the Parties have engaged in extensive discovery.  The next step in the litigation would have been contested motions for class certification and summary judgment, which would be costly and time-consuming for the Parties and the Court.  The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable and adequate to the Class.  This result will be accomplished years earlier than if the case proceeded to judgment through trial and/or appeals.

Consequently, this *Grinnell* factor plainly weighs in favor of preliminary approval of the proposed Settlement.

### B.   The Reaction Of The Class (*Grinnell* Factor 2)

Since Notice of the Settlement has not yet issued to the Class, it is not possible to gauge the reaction of the Class at this time.  However, with each Class Member potentially receiving at least $116,785.00 in cash, we expect the class will react favorably.

### C.   Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3)

As discussed above, the Parties have conducted substantial discovery, including document production, interrogatories, third-party discovery, and eight depositions in five states. *See supra*; *see also* Marchese Decl. ¶¶ 4-8.  The Parties have also sought and obtained relevant information from governmental sources through Freedom Of Information Act (FOIA) requests.

*Id.* ¶ 10.  The efforts made by counsel on both sides confirms that they are sufficiently well apprised of the facts of this action, and the strengths and weaknesses of their respective cases, to make an intelligent analysis of the proposed settlement.

"The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres v. Gristede's Oper. Corp.*, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010) (internal quotation omitted).  "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted).  The discovery conducted in this matter clearly traverses this hurdle.  This *Grinnell* factor thus also weighs in favor of preliminary approval.

>     **D.      Plaintiff Would Face Real Risks If The Case Proceeded (*Grinnell* Factors 4 And 5)**

Although Plaintiff's case is strong, it is not without risk.  In weighing the risks of certifying a class and establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *Id.* at 177 (internal quotations omitted).

In the context of this litigation, Plaintiff and the Class face risks and in certifying a class, and further litigation will only delay relief the Class Members.  The proposed Settlement alleviates these risks, and provides a substantial benefit to the Class in a timely fashion.  These *Grinnel* factors thus favor preliminary approval.

>     **E.      Establishing A Class And Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6)**

The risk of maintaining the class status through trial is also present.  The Court has not yet certified the proposed Class and the Parties anticipate that such a determination would be reached only after exhaustive briefing.  Defendants would likely argue that individual questions preclude class certification.  They would also likely argue that a class action is not a superior method to resolve Plaintiff's claims and that a class trial would not be manageable.

Should the Court certify the class, Defendant would likely challenge certification and move to decertify, forcing another round of briefing.  Defendant may also seek permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f).  Risk, expense, and delay permeate such a process.  The proposed settlement eliminates this risk, expense, and delay.  This factor weighs in favor of preliminary approval.

**F.    Defendants' Ability To Withstand A Greater Judgment (*Grinnell* Factor 7)**

CitiMortgage probably could withstand a greater judgment.  However, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank,* 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9).  Thus, at worst, this factor is neutral.

**G.    The Settlement Amount Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9)**

The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005)(internal quotation omitted).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought.  As the Second Circuit stated in *Grinnell*, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery." 495 F.2d at 455, n.2.

Here, each Class Member may receive at least $116,785.00 as their Settlement Benefit.  Settlement Agreement at 13-14, Marchese Decl. Exh. A.  In addition, Defendant has agreed to pay the costs of notice and administration and has agreed to pay reasonable counsel fees and costs for Class Counsel.  *Id.* at 15, 18.  Moreover, by proceeding with this Settlement co-extensively with the DOJ Settlement, Plaintiff and Settlement Class Members benefit from an

immediate recovery.  Weighing the benefits of the Settlement against the risks associated with proceeding in litigation, the Settlement is more than reasonable.  Moreover, when Settlement assures immediate payment of substantial amounts to Class Members, and in light of the DOJ Settlement does not "sacrific[e] 'speculative payment of a hypothetically larger amount years down the road,'" settlement is reasonable under this factor.  *See Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. Of Louisiana v. A.C.L.N. Ltd.*, 2004 WL 2997957, *5 (S.D.N.Y. May 14, 2004)).  Thus, these *Grinnell* factors also weigh in favor of preliminary approval.

* * *

All of the *Grinnell* factors weigh in favor of approval, or are neutral.  If objections arise after notice is issued to the Class, the Court may reevaluate its determination.  Because the settlement on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

## II.   CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE

Plaintiff respectfully requests that the Court conditionally certify the Settlement Class for purposes of effectuating the settlement.  The Court should determine that the proposed Settlement Class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation, and at least one of the subsections of Rule 23(b), *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Hanlon*, 150 F.3d at 1019; *Newberg* § 11:27 (citing *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.* ("*In re GMC*"), 55 F.3d 768 (3d Cir. 1995)), and provisionally certify the settlement class, and appoint Interim Class Counsel as class counsel and the Named Plaintiff as the class representative.

As discussed below, all of the certification requirements for settlement purposes are met and Defendant consents to provisional certification.  *See Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement

11

only."); *County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295 (2d Cir. 1990).

Provisional settlement approval, class certification, and appointment of class counsel have practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing. *See In re GMC,* 55 F.3d at 784; *Lenahan v. Sears, Roebuck & Co.*, No. 02-CV-0045, 2006 U.S. Dist. LEXIS 60307, at **18-19 (D.N.J. July 10, 2006) (conditionally certifying multi-state classes and granting preliminary approval to nationwide wage and hour settlement).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable;

> (2) there are questions of law or fact common to the class;

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the court to find that:

> questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

A.        **Numerosity**

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  "Impracticable does not mean impossible."  *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).  "[N]umerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Here, we cannot yet determine the exact number of members of the Settlement Class because PwC's review of CitiMortgage's foreclosure files has not yet been completed.  *See* Settlement Agreement at 3, 6-7, 12, Marchese Decl. ¶ 11 (requiring CitiMortgage to submit all foreclosure sales from January 1, 2006 through June 30, 2012 to PwC for SCRA foreclosure compliance review).  Nevertheless, we can reasonably project, based on the volume of foreclosures on Servicemembers' homes during the Class Period, that the numerosity requirement will be met.  *See* Marchese Decl. ¶ 11.

B.        **Commonality**

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be identical, they must share common questions of fact or law.  *Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983); *Savino v. Computer Credit, Inc.*, 173 F.R.D. 346, 352 (E.D.N.Y. 1997), *aff'd in part, rev'd in part on other grounds*, 164 F.3d 81 (2d Cir. 1998).  There must be a "unifying thread" among the claims to warrant class certification.  *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).  Courts construe the commonality requirement liberally.  *Frank*, 228 F.R.D. at 181 (citing *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992)).

The common issues in this case are whether CitiMortgage engaged in foreclosure and sale activity in violation of § 533(c) of the SCRA, and if so, what are the appropriate remedies for such violations.  *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008) (commonality satisfied where two questions of law were common to all class members).

13

**C.**        **Typicality**

Typicality is also met here.  "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members."  *Frank*, 228 F.R.D. at 182; *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982).  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A.*, 126 F.3d at 376 (internal quotations omitted).  "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiff and the class. *Robidoux*, 987 F.2d at 936-37.  Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members."  *Trinidad v. Breakaway Courier Sys., Inc.,* 05 Civ. 4116, 2007 U.S. Dist. LEXIS 2914, at *15 (S.D.N.Y. Jan. 12, 2007) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)).

Sergeant Rodriguez's claim is typical because CitiMortgage foreclosed on and sold his home while he was on active duty with the United States military.  This is the factual predicate for his claim, and the claim of every other class member.

**D.**        **Adequacy Of The Named Plaintiff**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the class representatives will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'"  *Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at **18-19 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir. 2006)).  "'[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'"  *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 U.S. Dist. LEXIS 38701, at *19 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.,* 181 F.R.D. 243, 259 (S.D.N.Y. 1998)).

14

So far as this litigation is concerned, Sergeant Rodriguez has no interests antagonistic to the interests of other Class Members. All are individuals with the mutual incentive to establish the alleged violation of the SCRA. All Class Members were allegedly impacted by the illegal foreclosure and sales practices at issue in an identical manner. Moreover, Sergeant Rodriguez has shown his commitment to representing the Class by sitting for deposition, responding to discovery requests, and generally being available throughout the course of this litigation.

In addition, Sergeant Rodriguez's counsel have provided fair and vigorous representation for the Class. These counsel have substantial experience and expertise in similar class action litigation and were appointed to serve as Interim Class Counsel by this Court.[2] *See Reyes v. Buddha-Bar NYC*, 2009 WL 5841177, at * 3 (S.D.N.Y. May 28, 2009)(adequacy requirement met where class counsel has "an established record of competent and successful prosecution of large … class actions, and the attorneys working on the case are likewise competent and experienced in the area.").

### E.        Certification Is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact not only be present, but "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. That Plaintiff easily meets the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

Certification under Rule 23(b)(3) will allow class members to opt out of the settlement and preserve their right to seek damages independently. *Cf. Brown v. Title Ticor Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992). This approach protects class members' due process rights. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846-48 (1999).

---

[2] *See* Dkt. No. 22 (Order granting motion to appoint interim class counsel).

### 1.   **Common Questions Predominate**

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001). The essential inquiry is whether "liability can be determined on a classwide basis, even when there are some individualized damage issues." *In re Visa Check/MasterMoney Antitrust Litig*, 280 F.3d at 139. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). The predominance requirement "is designed to determine whether 'proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Frank*, 228 F.R.D. at 183 (quoting *Amchem*, 521 U.S. at 623).

The predominance requirement is met here because every class member's claim is based on the allegation that CitiMortgage engaged in foreclosure and sale activity in violation of § 533(c) of the SCRA, and every class member seeks a remedy for that alleged SCRA violation. These allegations of a common course of conduct "provide[] the 'single central issue'" required to ensure predomination of common questions over individual issues. *In re Prudential Insur. Sales Practices Litig.*, 962 F.Supp. 450, 511-512 n.45 (D.N.J. 1997) ("*Prudential I*") (citing numerous other cases).

### 2.   **A Class Action Is A Superior Mechanism**

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[3]

---

[3] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the

Here, Sergeant Rodriguez and the Class Members have limited financial resources with which to prosecute individual actions, and Plaintiff is unaware of any individual lawsuits that have been filed by Class Members arising from the same allegations.  Concentrating the litigation in this Court is desirable because Defendant is a New York corporation.

Employing the class device here will not only achieve economies of scale for putative Class Members, but will also conserve the resources of the judicial system and preserve public confidence in the integrity of the system by avoiding the expense of repetitive proceedings and preventing inconsistent adjudications of similar issues and claims.  *See Hanlon*, 150 F.3d at 1023.  A class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the putative settlement class members' claims.

### III.   PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Interim Class Counsel should be appointed as Class Counsel.  Rule 23(g), which governs the standards and framework for appointing class counsel for a certified class, establishes four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(C)(i).   The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1)(C)(ii).  The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case."  Fed. R. Civ. P. 23(g) advisory committee's note.

This Court's order appointing Interim Class Counsel has already found that Sergeant Rodriguez's counsel meet all of these criteria.  *See* Order, Appointment of Interim Class Counsel, Dkt. No. 22.  The work counsel have done since that appointment, as described above,

---

[manageability] factor, however, when the class is being certified solely for the purpose of settlement."). Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 140 (internal quotation marks omitted).

buttresses the Court's prior findings and confirms that counsel are qualified for appointment as Class Counsel in this action.

## IV.    THE PROPOSED CLASS NOTICE IS APPROPRIATE

### A.    The Content Of The Proposed Class Notice Complies With Rule 23(c)(2)

The content of the Proposed Notice, which is attached to the Settlement Agreement as Exhibit E, fully complies with due process and Fed. R. Civ. P. 23.  Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

The content of the proposed Notice satisfies each of these requirements.  It also describes the Class Counsel's expected application for attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing, and how to object or exclude oneself or participate in the Settlement.  This information is adequate to put Class Members on notice of the proposed Settlement and is well within the requirements of Rule 23(c)(2)(B).

The mailed Notice provides detailed information about the Settlement, including: 1) a comprehensive summary of its terms; 2) Interim Class Counsel's intent to request attorneys' fees, reimbursement of expenses, and enhancement awards for the Named Plaintiff; and 3) detailed information about the Released Claims.  In addition, the Notice provides information about the Fairness Hearing date, the right of Class Members to seek exclusion from the Class or to object to the proposed Settlement (as well as the deadlines and procedure for doing so), and the procedure to receive additional information.  *Id.*  In short, the Notice Plan is intended to fully inform Class Members of the lawsuit, the proposed Settlement, and the information they need to make informed decisions about their rights.  The very detailed information in this proposed

notice goes well beyond the requirements of the Federal Rules.  Indeed, courts have approved class notices  even when they provided only general information about a settlement.  *See, e.g.*, *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally").

> **B.**      **The Plan For Distribution Of The Class Notice Complies With Rule 23(c)(2)**

The Notice will be sent by first class mail to every Class Member.  In the event that any Class Notice is returned undeliverable with no forwarding address, reasonable address traces will be performed and Defendant will re-mail the Class Notice no later than 30 days from the initial date on which Class Notices were mailed.  This method of distribution is the gold-standard in the class action field.  It fully complies with Rule 23(c)(2).

## CONCLUSION

For the reasons set forth above, Sergeant Rodriguez respectfully requests that the Court grant his Motion for Preliminary Approval of the Settlement.  A Proposed Order granting preliminary approval, certifying the Settlement Class, appointing Class Counsel, and approving the Proposed Notice of Settlement, is submitted herewith.


Dated:  December 28, 2012

Respectfully submitted,

**BURSOR & FISHER, P.A.**


By: _____s/_____
          Scott A. Bursor
Scott A. Bursor (SB1141)
Joseph I. Marchese (JM1976)
888 Seventh Avenue
New York, NY 10019
Tel:  212-989-9113
Fax: 212-989-9163
E-Mail:  scott@bursor.com
        jmarchese@bursor.com

**CARLSON LYNCH LTD**
Gary Lynch (*pro hac vice*)
36 N. Jefferson Street
P.O. Box 7635
New Castle, PA 16107
Tel: 724-656-1555
Fax: 724-656-1556
E-Mail:  glynch@carlsonlynch.com

**FARUQI & FARUQI, LLP**
Gerald D. Wells III (*pro hac vice*)
Robert J. Gray (*pro hac vice*)
101 Greenwood Avenue
Suite 600
Jenkintown, PA 19046
Tel: 215-277-5770
Fax: 215-277-5771
E-Mail:  jwells@faruqilaw.com
           rgray@faruqilaw.com

*Co-Lead Interim Class Counsel*